UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BARRY Z. LEVINE

                  Plaintiff,

    -v-                            1:11–CV–1038

ELLIOT LANDY & LANDYVISION, INC.,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HESLIN ROTHENBERG FARLEY & MESITI P.C.<br>Attorneys for Plaintiff<br>5 Columbia Circle<br>Albany, NY 12203 | ANNETTE I. KAHLER, ESQ.<br>NICHOLAS MESITI, ESQ. |
| COWAN, DeBAETS, ABRAHAMS,<br>   & SHEPPARD LLP<br>Attorneys for Defendants<br>41 Madison Avenue<br>34th Floor<br>New York, NY 10010 | ELEANOR M. LACKMAN, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Barry Z. Levine ("plaintiff" or "Levine") brought suit against Elliot Landy

("Landy") and his company, Landyvision, Inc. ("Landyvision") (collectively "defendants")

asserting a total of twenty-one causes of action, including copyright infringement, unjust

enrichment, conversion, unfair competition, and that an accounting is due.

Defendants moved to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff opposed.[1]  Oral argument was heard in Utica, New York on December 9, 2011.  Decision was reserved.

## II. BACKGROUND

### A. Facts

The following facts, taken from the complaint and incorporated documents, are accepted as true for purposes of the motion to dismiss.   Plaintiff attended and took photographs at the 1969 Woodstock music festival.  In 1979, he entered into an oral agreement with Landy, under which Landy would license plaintiff's photographs and remit royalty payments received from the licensing to plaintiff.  As part of this agreement, plaintiff provided defendant the original slides of his photographs.

In 1994, Levine agreed to license five of his photographs for use in a book published by Landyvision, Inc.  titled "Woodstock 1969–The First Festival" (the "1994 book").  In late 2007 through early 2008, the parties discussed collaborating on a reprint of the 1994 book but did not reach an agreement.  By August 2008, the parties' relationship had soured and Levine terminated his business relationship with Landy.

According to plaintiff, on November 3, 2008, French publisher Fetjaine published a French reprint of the 1994 book (the "Fetjaine book") in France, with Landy's authorization.  Plaintiff contends his photographs were used in that book without his permission and some of the works misrepresented Landy as the photographer.  Plaintiff also contends defendants

---

[1]  In response to defendants' motion, plaintiff states "[i]n the event that this court finds plaintiff's complaint insufficiently pled for any reason, plaintiff should be granted leave to amend."  Pl.'s Opp'n Mem. of Law, Dkt. No. 13, 19.  This request is not considered at this time because Levine did not make a formal motion to amend nor did he go through the proper standard for permitting an amendment.

used additional photographs without his consent and without crediting him in a 2009 book they published, titled "Woodstock Vision–The Spirit of a Generation"; on defendants' website www.landyvision.com; on non-party website www.intercontinental-ltd.com; and in a 2009 book published by non-parties Brad Littleproud ("Littleproud") and Joanne Hague ("Hague"), titled "Woodstock:  Peace, Music and Memories."  Finally, Levine asserts defendants published, distributed, and/or copied some of his photographs, with his permission, but without remitting payment to him as agreed by the parties.

## B.  Copyrighted Works

Plaintiff alleges he is "the copyright author and owner of all of Plaintiff's Woodstock Photographs, whether such photographs are registered or unregistered with the U.S. Copyright Office."  Compl., Dkt. No. 1, ¶ 38.  The complaint identifies eight registered copyrights, id. ¶¶ 40–47, and three pending applications for copyrights, id. ¶¶ 48–50.  Since the filing of the complaint, the three pending applications have been approved, bringing the total registered copyrights identified in the complaint to eleven.  See Decl. of Annette I. Kahler, Exs. A–B, Dkt. No. 13-2; Letter of Annette I. Kahler, Dkt. No. 18.  Many of the registrations are for collections which include multiple photographs.  The registration certificates attached to the complaint do not indicate which photographs comprise the collections.  Therefore it is difficult to determine precisely how many photographs in total are involved in this lawsuit.[2]

Not all the photographs identified in the complaint are alleged to have been infringed.  Eleven photographs are identified as the subject of the copyright infringement claims (Counts

_____

[2]  For example, the recently registered "Woodstock Artists and Scenery Collection 1" includes five photographs, only some are which are alleged to have been infringed.  See Dkt. No. 18.

1–17) ("Group A photographs").  At oral argument, plaintiff's counsel indicated there are some photographs involved in this lawsuit for which defendants had authorization to distribute, publish, and/or reproduce (and thus were not infringed upon), but for which payments were never remitted to plaintiff ("Group B photographs").  Group B photographs therefore do not include those eleven photographs identified in Counts 1–17, the copyright infringement claims.  The distinction between Group A and Group B photographs is particularly important in analyzing whether Levine's unjust enrichment claim and demand for an accounting are preempted by the Copyright Act.

## III.  DISCUSSION

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing all claims relating to the Fetjaine book; claims relating to unregistered copyrights; claims for statutory damages and attorneys' fees; infringement claims involving third parties; and plaintiff's Lanham Act, New York State statute, and common law claims as preempted by the Copyright Act.

### A.  Legal Standard

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's factual allegations must be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff to assess whether a plausible claim for relief has been stated.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–61, 127 S. Ct. 1955, 1964–67 (2007); Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1953 (2009) (holding that the pleading rule set forth in Twombly applies in all civil actions).  The factual allegations must be sufficient "to raise a right to relief above the speculative level," crossing the line from conceivable to plausible. Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.  Additionally, "a formulaic recitation of the

- 4 -

elements of a cause of action will not do." Id. at 555, 127 S. Ct. at 1965. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965).

Thus, in reviewing the sufficiency of the pleading, a court first may identify legal conclusions that "are not entitled to the assumption of truth." Id. at 1950. The court should then "assume [the] veracity" of "well-pleaded factual allegations . . . and determine whether they plausibly give rise to an entitlement to relief." Id.

**B. Fetjaine Book Published in France** (Counts 1, 3, 4, 6, 8, 9, 10, and 14)

Defendants argue the copyright infringement claims involving the book published in France must be dismissed because the court does not have subject matter jurisdiction over infringement which occurred outside the United States.

It is well established that copyright laws generally do not have extraterritorial application. Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir. 1988). The Second Circuit has recognized an exception to this rule when there is a qualifying predicate infringing act in the United States. Id. For the exception to apply, a plaintiff must show the conduct: (1) took place in the United States and (2) was in violation of the Copyright Act. See id. A violation of the Copyright Act occurs when an infringer violates one of the exclusive rights of a copyright owner in § 106 of the Copyright Act. 17 U.S.C. § 106. Under § 106, a copyright owner has the exclusive rights to do and to authorize any of the following: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the work publicly; and (5) display the work publicly. See id. To allege a predicate act, plaintiff must

assert defendants violated one of the above mentioned rights within the United States.  It should be noted that inducement and causation, alone, are not violations under § 106.

The complaint alleges defendants "copied, distributed, and published, caused to have published, or induced the publication of" various photographs as part of the Fetjaine book. Compl., ¶¶ 54, 70, 78, 95, 111, 118, 127, 158.  It also states Landy "authored and published" the book in connection with publisher Fetjaine; "published, caused to be published, or induced the publication" of the book; intentionally misrepresented plaintiff as associated with the book; and misrepresented some of the photographs as Landy's when they were actually plaintiff's. Id. ¶¶ 25–27.  Finally, it is undisputed plaintiff did not consent to the use of his photographs in the Fetjaine book and that since 1979, defendant maintained physical possession of plaintiff's original Woodstock slides.

Making all reasonable inferences in plaintiff's favor as must be done on a motion to dismiss, the complaint alleges defendants engaged in conduct in the United States, which if true, would be in violation of the Copyright Act.  While inducement and causation by defendants are not alone enough to qualify as predicate infringing acts in the United States, plaintiff has alleged defendants engaged in direct infringement and violations under § 106, including copying, distributing, and publishing his photographs.  If after the course of discovery, the evidence demonstrates that defendants merely induced or caused publisher Fetjaine to infringe plaintiff's copyrights, defendants may potentially succeed on a summary judgment motion.  On the present facts, defendants' motion to dismiss claims involving the Fetjaine book will be denied.

C. **Unregistered Copyrights— 17 U.S.C. § 411** (Counts 5, 11, 12, 13, 14, 15, 16 and 17)

Defendants contend eight causes of action relating to unregistered works must be dismissed.  According to defendants, the following four works are unregistered:  (1) the Richie Havens photograph in Count 5; (2) the Leo Lyons photograph in Counts 11, 12, and 13; (3) the Grace Slick photograph in Counts 14 and 15; and (4) the Aerial View 2 photograph in Counts 16 and 17.

Section 411 of the Copyright Act mandates that, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).

Following the filing of the complaint and the briefing of the instant motion, plaintiff received registration certificates for all four of the works at issue.  The Leo Lyons and Aerial View 2 photographs have an effective registration date of August 30, 2011.  The Richie Havens and Grace Slick photographs have an effective registration date of August 31, 2011. Therefore plaintiff possesses registered copyrights for all of the works identified in the copyright infringement claims (Counts 1-17) and defendants' motion to dismiss Counts 5, 11, 12, 13, 14, 15, 16, and 17 will be denied.

D. **Statutory Damages and Attorneys' Fees— 17 U.S.C. § 412** (All copyright infringement claims, Counts 1–17)

Defendants contend plaintiff is prohibited from claiming statutory damages and attorneys' fees because all of the alleged infringement commenced prior to the registration of his copyrights with the United States Copyright Office.

Section 504 of the Copyright Act sets forth the types of remedies a plaintiff may seek in a lawsuit for copyright infringement.  That section provides a plaintiff with the option of

electing one of two types of remedies:  "(1) the copyright owner's actual damages and any

additional profits of the infringer . . . or (2) statutory damages."  17 U.S.C. § 504(a)(1)(2).

Additionally, § 505 provides that the court in its discretion may award attorneys' fees and

costs to the prevailing party.  17 U.S.C. § 505.  However, the Copyright Act limits the

availability of statutory damages and attorneys' fees to only those plaintiffs who registered

their copyright prior to the commencement of the infringement.  Specifically, § 412 of the

Copyright Act provides that:

> [N]o award of statutory damages or of attorney's fees, as provided
> by sections 504 and 505, shall be made for . . . any infringement
> of copyright commenced after first publication of the work and
> before the effective date of its registration, unless such
> registration is made within three months after the first publication
> of the work.

17 U.S.C. § 412(2).  Therefore, to determine which photographs, and ultimately under which

causes of action plaintiff may elect statutory damages and/or attorneys' fees, special

attention needs to be given to the date of registration and date of infringement for each

work.[3]

   Plaintiff alleges the photographs in the Fetjaine book (Counts 1, 3, 4, 6, 8, 9, 10, and

14) were infringed on November 3, 2008, the date the book was published.  According to the

complaint, the photographs in Counts 1, 3, 4, 6, 8, and 10 were all registered some time in

October 2008, prior to the November 3, 2008, infringement and thus claims for statutory

damages and attorneys' fees for these counts may proceed.  The Janis Joplin photograph in

Count 9 was not registered until April 22, 2009.  Since the November 3, 2008, infringement

---

[3]  In its reply in support of its motion to dismiss, defendants' counsel prepared a chart summarizing their analyses of claims for statutory damages and attorneys' fees.  See Reply Decl. of Eleanor M. Lackman, Ex. A, Dkt. No. 14–2.  During oral argument, plaintiff's counsel submitted a chart outlining its analyses of claims for statutory damages and attorneys' fees.  See Dkt. No. 17.

date pre-dates the April 22, 2009, copyright registration, plaintiff cannot obtain statutory damages or attorneys' fees for Count 9.  Count 14 involves the Grace Slick photograph which was not registered until August 31, 2011, but alleged to be infringed on November 3, 2008.  On those facts, Levine cannot elect statutory damages or attorneys' fees.  However, that photograph was first published on August 30, 2011, potentially entitling plaintiff to such relief under the latter part of § 412(2) providing an exception to the general timeline if "such registration is made within three months after the first publication of the work."  17 U.S.C. § 412(2).  Therefore defendants' motion to dismiss the request as to Count 14 will be denied.

Counts 2, 5, 7, 13, and 17 allege defendants infringed plaintiff's copyrights by posting his photographs to certain websites.  The photographs in Counts 2 and 7 were registered on October 31, 2008.  According to plaintiff, these photographs were displayed at an unknown date and for a lengthy period.  Even drawing all reasonable inferences in plaintiff's favor, he has not alleged any date, which if true, would entitle him to the relief he requests.  Therefore he cannot elect statutory damages and attorneys' fees for Counts 2 and 7.  With respect to the remaining website-related claims, Count 5 involves the Richie Havens photograph, registered on August 31, 2011, prior to the alleged infringement on December 9, 2011.[4]  Therefore the request as to Count 5 may proceed.  Similarly, the photographs in Counts 13 and 17 were registered on August 30, 2011, and alleged to have been infringed on

---

[4]  It should be noted neither party addressed what the "commencement" date of infringement is for infringement occurring on a website.  The Second Circuit is clear that, under § 412, "a plaintiff may not recover statutory damages and attorney's fees for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration."  See Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158 (2d Cir. 2007).  Therefore, if the commencement dates of the internet infringements were prior to the registration dates for the allegedly infringed works, statutory damages and attorneys' fees would be barred for those works.

December 9, 2011.  Thus, plaintiff's claims for statutory damages and attorneys' fees as to Counts 13 and 17 may proceed.

Turning to the remaining claims, the photographs in Counts 11, 12, and 16 were not registered until August 30, 2011, yet alleged to be infringed in 2009.  Since any date in 2009 pre-dates the registration of those photographs on August 30, 2011, plaintiff cannot elect to obtain statutory damages or attorneys' fees for Counts 11, 12, or 16.  Finally, Count 15 involves the Grace Slick photograph previously mentioned, registered on August 31, 2011.  Because the infringement for Count 15 occurred some time in 2009—well before registration—relief would not be available.  However, because the work was first published on August 30, 2011, Levine may elect statutory damages and attorneys' fees because "registration [would be] made within three months after the first publication of the work."  17 U.S.C. § 412(2).  Accordingly, the request as to Count 15 may proceed at this time.

In summary, Levine's request for statutory damages and attorneys' fees for Counts 1, 3, 4, 5, 6, 8, 10, 13, 14, 15, and 17 may proceed at this time.  Consequently, he is barred from seeking statutory damages and attorneys' fees for Counts 2, 7, 9, 11, 12, and 16.

### E. **Infringement Claims Involving Third Parties** (Counts 2, 7, and 12)

Defendants argue claims alleging infringement by non-parties Littleproud, Hague, and website www.intercontinental-ltd.com must be dismissed because these claims fail to allege direct infringement by the defendants.  They contend Levine's conclusory allegations that Landy copied, distributed, and published the works at issue are insufficient, particularly because the complaint identifies non-parties responsible for the infringement.

Similar to the extraterritorial infringement principles explained above, to assert a direct copyright infringement claim, a plaintiff must proffer sufficient facts to create a reasonable

inference that defendants copied, distributed, displayed or otherwise violated an exclusive right in Levine's works under § 106.  Defendants are correct in that the complaint alleges non-parties Littleproud, Hague, and www.intercontinental-ltd.com actually published and/or distributed Levine's photographs.  As previously noted, inducement and causation cannot form the basis for direct infringement claims under the Copyright Act.

Secondary liability principles were not addressed in either parties' briefs but were raised at oral argument.  "[C]ontributory infringement liability is imposed on persons who know or have reason to know of the direct infringement" and "liability exists if the defendant engages in personal conduct that encourages or assists the infringement."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 118 (2d Cir. 2010) (internal citations and quotations omitted).  "One infringes contributorily by intentionally inducing or encouraging direct infringement."  See MGM Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764, 2776 (2005).  "Although the Copyright Act does not expressly render anyone liable for infringement committed by another, these doctrines of secondary liability emerged from common law principles and are well established in the law."  Id. (internal citations and quotations omitted).

"To state a claim for contributory copyright infringement, a plaintiff must aver that the defendant, 'with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another.'"  Warner Bros. Entm't Inc. v. Ideal World Direct, 516 F. Supp. 2d 261, 267–68 (S.D.N.Y. 2007) (quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)).  "Secondary liability may be imposed on a defendant who does nothing more than encourage or induce another to engage in copyright infringement."  Id. at 268 (citing Grokster, 545 U.S. at 936, 125 S. Ct. at

2779).  However, "the fact or intention of a direct infringement" must be alleged and ultimately proven.  See id.

Levine pleads facts giving rise to claims of contributory copyright infringement by defendants.  Count 2 alleges direct infringement by www.intercontinental-ltd.com in displaying the Hendrix photograph without plaintiff's consent.  Compl. ¶ 62.  The complaint asserts "Defendants copied, distributed, and published, caused to have published, or induced the publication of, the Hendrix Photo on the website."  Id.

In Count 7, the complaint alleges www.intercontinental-ltd.com infringed plaintiff's copyright by displaying the Aerial View 1 photograph without his consent.  Id. ¶ 103.  It further alleges "Defendants copied, distributed, and published, caused to have published, or induced the publication of the Aerial View 1 Photo on the website."  Id.

Finally, Count 12 alleges Littleproud and Hague infringed plaintiff's copyright by distributing books with the Leo Lyons photograph without his permission and intentionally misrepresenting Landy as author of the photograph.  Id. ¶¶ 142–143.  The complaint alleges "Defendants copied, distributed, and published, caused to have published, or induced the publication of, the Leo Lyons Photo as part of a book titled 'Woodstock: Peace, Music and Memories.'"  Id. ¶ 142.

These causes of action are not specifically titled as claims of direct infringement by defendants.  Instead, they bear the headings "Copyright Infringement."  Counts 2, 7, and 12 identify non-parties responsible for displaying the photographs and distributing books containing Levine's copyrighted works, and assert defendants "copied, distributed, and published, caused to have published, or induced the publication of" these works.  Plaintiff

adequately alleges contributory copyright infringement and defendants' motion to dismiss Counts 2, 7, and 12 will be denied.

    **F.**  **Preemption of Remaining Claims** (Counts 18, 19, 20, and 21)

    Finally, defendants argue Levine's remaining (non-copyright infringement) claims are not cognizable as a matter of law because they are preempted by the Copyright Act.

    "The Copyright Act preempts state law causes of action that are 'equivalent to any of the exclusive rights within the general scope of copyright.'" eScholar, LLC v. Otis Educ. Sys., Inc., 387 F. Supp. 2d 329, 332 (S.D.N.Y. 2005) (quoting 17 U.S.C. § 301(a)).  Section 301 "sets forth a two-part test to determine whether a state-law claim is preempted by the Copyright Act, with a further 'extra elements' exception." Barclays Capital Inc. v. Theflyonthewall.com, Inc., 650 F.3d 876, 892 (2d Cir. 2011).  A claim is preempted:  "(i) if it seeks to vindicate 'legal or equitable rights that are equivalent' to one of the bundle of exclusive rights already protected by copyright law" under § 106—the "'general scope requirement'"; and "(ii) if the work in question is of the type of works protected by the Copyright Act" under §§ 102 and 103—the "'subject matter requirement.'" Id. (quoting Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848 (2d Cir. 1997)).

    With regard to the extra elements exception, the Second Circuit observed in National Basketball Association that "certain forms of commercial misappropriation otherwise within the general scope requirement will survive preemption if an 'extra-element' test is met." Nat'l Basketball Ass'n,105 F.3d at 850.  Under this test, "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption." Id. (internal quotations omitted).

**i. Unjust Enrichment** (Count 18)

Defendants assert plaintiff's unjust enrichment cause of action is preempted because it flows directly from his copyright infringement claims. Plaintiff responds that this claim is qualitatively different than a copyright claim because it relates to his right to receive proceeds generated from the use of his photographs.

"'Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are generally preempted.'" Weber v. Geffen Records, Inc., 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999) (quoting Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1322 (S.D.N.Y. 1997)). In Netzer, "the gravamen of the unjust enrichment claim [was] unauthorized exploitation of Ms. Mystic [a comic book character] without providing an accounting." Netzer, 963 F. Supp. at 1322. Likewise, in Weber, the plaintiff musician was co-owner of copyrighted songs and argued the defendants' (his former bandmates') copyrights should not entitle them to all the rights that attach to copyright ownership because they were co-owners. Weber, 63 F. Supp. 2d at 463. The Weber Court found "[i]t is only through this basic claim that any enrichment is unjust, that any competition is unfair, or that anyone profiting must account to plaintiff." Id.

As explained above, there are two operative groups of photographs in the complaint: Group A photographs, alleged to have been infringed and Group B photographs, not alleged to have been infringed. Separate analyses must be conducted for each group.

With respect to the Group A photographs, given the two-prong test, it is clear plaintiff's unjust enrichment claim is preempted by the Copyright Act. This claim is analogous to the Netzer and Weber claims. First, this claim seeks to vindicate plaintiff's rights to distribute,

publish, and/or reproduce the photographs—rights clearly protected by § 106.  Thus the "general scope requirement" is met.  Second, this cause of action applies to plaintiff's Woodstock photographs—pictorial works protected under § 102, meeting the "subject matter requirement."

Turning to the extra elements test, "[t]he basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).  Levine alleges the second and third elements in that "Defendants distributed numerous of Plaintiff's Woodstock Photographs to Redferns Music Picture Library . . . and potentially to other publishers . . . without notice or reporting of the same to Plaintiff Levine" and that "Defendants received remuneration for distribution and publication of Plaintiff's Woodstock Photographs, the proceeds of which were not properly reported or remitted to Plaintiff Levine."  Compl., ¶¶ 189–190.  These acts, by themselves, would infringe plaintiff's publication and distribution rights protected by § 106.  See Briarpatch, 373 F.3d at 306.

Similar to the plaintiff in Briarpatch, Levine alleges defendants here were enriched by these acts.  In Briarpatch, the Second Circuit held that the enrichment element does not go "far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim."  Id.  Therefore, plaintiff's unjust enrichment claim with respect to the Group A photographs (those identified in Counts 1–17) is preempted by the Copyright Act and will be dismissed.

With respect to the Group B photographs, the outcome is different.  Levine contends he authorized defendants to distribute, publish, and/or reproduce the Group B photographs.

Therefore, this claim does not seek to vindicate his rights to distribute, publish, and/or reproduce the photographs. Instead, he takes issue with defendants' failure to remit payment to him. This is distinguishable from <u>Netzer</u> and <u>Weber</u> where the use was unauthorized; here there was no unauthorized use of the Group B photographs.

The right which plaintiff seeks to vindicate with respect to the Group B photographs is his right to payment for their use. Whether termed a right to "payment," "royalties," "compensation," "proceeds," or "remuneration," plaintiff is not attempting to vindicate rights protected by the Copyright Act with regard to these photographs. Because this right is not one of the bundle of rights protected under § 106, the "general scope requirement" is not met. Therefore, plaintiff's unjust enrichment claim with respect to the Group B photographs (those photographs identified in the complaint other than those listed in <u>Counts 1–17</u>) is not preempted by the Copyright Act and may proceed.

### ii. **Conversion** (Count 19)

The acts of conversion in this cause of action are predicated on Landy's wrongful possession of the slides, not on the alleged wrongful copying. Defendants concede Levine's claim relating to the retention of his hard-copy original slides which have not been returned may proceed. Accordingly, defendants' motion to dismiss <u>Count 19</u> will be denied.

### iii. **Unfair Competition** (Count 20)

Levine brings unfair competition claims under the Lanham Act, New York common law, and New York General Business Law section 349. <u>Count 20</u> alleges when distributing, publishing, and/or reproducing plaintiff's Woodstock photographs, Landy falsely represented the photographs as his own. Levine contends the misattribution misled the public as to the photographs' true authorship.

The heart of these claims is the allegation of "reverse passing off," the principle that defendants have "passed off" the Woodstock photographs as their own.  See Gary Friedrich Enters. v. Marvel Enters., 713 F. Supp. 2d 215, 231 (S.D.N.Y. 2010) (citing Dastar Corp. v. 20th Century Fox Film Corp., 539 U.S. 23, 28 n.1, 123 S. Ct. 2041, 2045 (2003)).

### a. Lanham Act

Defendants argue the Lanham Act conflicts with the Copyright Act.  The Lanham Act provides in relevant part:

> (a)(1) Any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin . . . which-
>
> (A) is likely to cause confusion . . . as to the origin . . . of his or her goods . . .
>
> . . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125.  A false representation to the origin of a work, or a reference which is misleading or likely to confuse, may form the basis of a claim under subsection (A).  See Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 780 (2d Cir. 1994).  "Actions arising under subsection (A), commonly known as reverse passing off claims, proscribe misrepresentations about who manufactured the product in question."  Gary Friedrich Enters., 713 F. Supp. 2d at 234.

A reverse passing off claim requires the following allegations:

> (1) that the [product] at issue originated with the plaintiff; (2) that [the] origin of the [product] was falsely designated by the defendant; (3) that the false designation of origin was likely to

- 17 -

cause consumer confusion; and (4) that the plaintiff was harmed
by the defendant's false designation of origin.

Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, 380 F.3d 126, 131 (2d Cir.

2004) (quoting Softel, Inc. v. Dragon Med. & Scientific Commc'ns, 118 F.3d 955, 970 (2d Cir.

1997)).  Reverse passing off claims usually involve a manufactured product rather than a

written work, Waldman Publishing Corp., 43 F.3d at 780, and it is clear subsection (A) "does

not . . . cover misrepresentations about the author of an idea, concept, or communication

embodied in those goods." Gary Friedrich Enters., 713 F. Supp. 2d at 234.

In Gary Friedrich Enterprises, the individual plaintiff created the idea for a "Ghost

Rider" comic book character.  He later wrote a Ghost Rider comic which was published by

the predecessor to the defendant, Marvel Enterprises.  Although he was the author and

creator of the Ghost Rider comic, Marvel Enterprises retained the copyright by agreement.

Decades later, after which the plaintiff claimed the copyright expired and reverted back to

him, Marvel Enterprises licensed its Ghost Rider rights to several entities with the aim of

producing a major feature film and related merchandise.  The film and related merchandise

credited Marvel Enterprises as the author of the Ghost Rider characters and story.  The

plaintiff initiated a lawsuit alleging unlawful use of his characters and story.  The lawsuit

included claims for, inter alia, copyright infringement and unfair competition under the

Lanham Act and the common law.

The defendants in that case moved to dismiss the state law and Lanham Act claims

on the grounds they were preempted by the Copyright Act.  The unfair competition claims

alleged "the defendants have caused 'confusion or misunderstanding' regarding the true

ownership of the Ghost Rider characters and story, misleading the consumer public." Gary

Friedrich Enters., 713 F. Supp. 2d at 231.  The court noted "[t]he crux of these claims is the allegation of 'reverse passing off,' the notion that defendants have 'passed off' the Ghost Rider ideas as their own."  Id.

With respect to the Lanham Act claim, the plaintiffs asserted the defendants' use of the "Marvel" designation on the Ghost Rider products misled the public as to the origin of the Ghost Rider character.  Id. at 233–34.  The court noted actions under subsection (A) of the Lanham Act "proscribe misrepresentations about who manufactured the product in question." Id. at 234.  On the facts before the court, it concluded subsection (A) "does not, however, cover misrepresentations about the author of an idea, concept, or communication embodied in those goods.  Here, the plaintiffs' potential claim under subsection (A) is asserting precisely the misrepresentation of ideas embodied in the Ghost Rider products."  Id.  In other words, that section does not protect the misrepresentation of the origin of the Ghost Rider character.  Plaintiff Levine's Lanham Act claim is distinguishable from Gary Friedrich Enterprises.  Here, Levine alleges defendants misrepresented the origin of the photographs themselves; not the ideas, concepts, or communications embodied in the photographs.

It is on this distinction that Waldman Publishing Corp. is instructive.  Waldman Publ'g Corp., 43 F.3d 775.  In Waldman Publishing Corp., the parties were both publishers of children's books.  The plaintiffs contracted with writers to adapt the texts of classic children's literary works and with artists to create illustrations.[5]  The plaintiffs alleged the defendants published books substantially similar to their books without designating the plaintiffs as the

_____

[5]  The books were adaptions of literary works in the public domain and abbreviated versions of the classics.  The stories were written in simplified language and had illustrations to make them more appealing to young children.  The plaintiffs credited the writers and artists in the front of each book.  Each book also contained a copyright notice on behalf of the plaintiffs for the cover and the text.

source of the books.  The defendants' books were not exact copies, but the arrangement of the chapters, the texts, and the illustrations closely followed the plaintiffs' books.  It was undisputed the defendants published the books at their facility.[6]

In analyzing whether the plaintiffs in Waldman Publishing Corp. sufficiently demonstrated a false designation of origin, the court acknowledged that "[r]everse passing off as applied to a written work involves somewhat different concepts" than the typical manufactured product.  Id. at 780.  The court explained that with written works, "the Lanham Act may be used to prevent the misappropriation of credit properly belonging to the original creator of the work."  Id. at 780–81 (internal quotations omitted).  Thus, the Lanham Act prohibits "the reproduction of a work with a false representation as to its creator."  Id. at 781.  The court explained "[t]he misappropriation is of the artistic talent required to create the work, not of the manufacturing talent required for publication."  Id.  Finally, the Waldman Publishing Corp. Court noted the distinction between the federal statutes at issue:

> [T]he Copyright Act and the Lanham Act address different harms. Through a copyright infringement action, a copyright owner may control who publishes, sells or otherwise uses a work.  Through a Lanham Act action, an author may ensure that his or her name is associated with a work when the work is used.

Id.

Levine asserts defendants inaccurately represented some of the photographs as taken by Landy.  This is sufficient to allege false designation of origin, in that plaintiff alleges false representation as to the creator of the works.  Levine also alleges the public has been mislead as to the true origin of the photographs and that he has been, and will continue to

---

[6] Each of the books displayed their logo and included a copyright notice on their behalf.  A writer by whom the story was "retold" to and an illustrator were credited in each book.

be, damaged by the false designation.  Accordingly, plaintiff adequately pleads a Lanham Act claim which is not preempted by the Copyright Act based on these allegations.  Because this analysis is heavily fact dependent, defendants' motion to dismiss based on preemption will be denied.

> **b.  Common Law**

Defendants argue Levine's New York common law claim for unfair competition is also preempted by the Copyright Act.

"Common law unfair competition is 'a broad and flexible doctrine . . . [that] is adaptable and capacious.'"  Barbagallo v. Marcum LLP, --- F. Supp. 2d ----, No. 11–CV–1358, 2011 WL 5068086, at *11 (E.D.N.Y. Oct. 25, 2011) (quoting Roy Export Co. Establishment v. Columbia Broad. Sys. Inc., 672 F.2d 1095, 1105 (2d Cir. 1982)).  A common law unfair competition action is generally limited to three categories:  "passing off one's goods as those of another, engaging in activities solely to destroy a rival, and using methods themselves independently illegal."  Id. (quoting Coca-Cola N. Am. v. Crawley Juice, Inc., No. 9–CV–3259, 2011 WL 1882845, at *7 (E.D.N.Y. May 17, 2011)).  Levine's allegations fall under the misappropriation category of passing off one's goods as those of another.

To establish an unfair competition claim of misappropriation, a plaintiff must prove his or her "skills, expenditure, or good will" were "misappropriated" by the defendant and the defendant "displayed some element of bad faith in doing so."  Quadrille Wallpapers & Fabric, Inc. v. Pucci,  No. 1:10–CV–1394, 2011 WL 3794238, at *5 (N.D.N.Y. Aug. 24, 2011) (Kahn, J.) (quoting Abe's Rooms, Inc. v. Space Hunters, Inc., 38 A.D.3d 690, 692 (N.Y. App. Div. 2d Dep't 2007)).  In applying the extra element test, the Second Circuit has held that New York

unfair competition claims based solely on the copying of protected expression are preempted by § 301 of Copyright Act.  See Cabell v. Sony Pictures Entm't, Inc., 425 Fed. App'x 42, 43 (2d Cir. 2011) (summary order) (citing Kregos v. Associated Press, 3 F.3d 656, 666 (2d Cir. 1993)).  However, "unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra-element test and avoid § 301 preclusion." Kregos, 3 F.3d at 666.

Here, plaintiff's unfair competition claim is based on defendants' reproduction of plaintiff's photographs and their misrepresentation of the works' authorship.  It is essentially a copyright infringement claim with the added allegation that after unlawfully copying, distributing, and/or publishing the photographs, defendants stamped their own name or copyright on the works, rather than plaintiff's.  The distinction between copying and failing to credit an author versus copying and misrepresenting the authorship was essential in determining whether Levine alleged a "false designation of origin" as required by the Lanham Act.  That distinction does not save plaintiff's common law unfair competition claim.  Levine's claim that defendants misrepresented the authorship is not based upon a breach of confidential relationship, breach of fiduciary duty, or a trade secret.  Accordingly, plaintiff's common law unfair competition claim is preempted based on these facts and will be dismissed.

### c. New York State General Business Law

Finally, with regard to the claim under section 349 of the New York General Business Law, defendants contend the complaint fails to allege actual harm to the public at large, as required by the New York statute.

Section 349 of the New York General Business Law is a consumer protection statute. See Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 319 (S.D.N.Y. 2010). It provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." N.Y. Gen. Bus. Law § 349(a). It creates a private right of action for consumers harmed by violation of the statute. Id. § 349(h). To assert a claim under section 349, a plaintiff must allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Stadt, 719 F. Supp. 2d at 319 (quoting Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)) (emphasis added). "[T]he gravamen of the complaint must be consumer injury or harm to the public interest." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995).

Levine fails to allege the necessary elements to state a claim under this section. The complaint generally alleges harm to the public but does not allege defendants' actions harmed the public in a material way. Levine's sole allegation of consumer harm is that "Defendants have and continue to intentionally misrepresent and misappropriate authorship of numerous" of plaintiff's photographs, "thereby deceiving and misleading the public as to the true origin and authorship of said photographs." Compl. ¶ 201. Like in Stadt, the complaint here "lack[s] any allegations as to how consumers were harmed" by Landy's deceitful and misleading behavior. Stadt, 719 F. Supp. 2d at 324. Further, "allegations of consumer confusion are generally not sufficient consumer harm to state a section 349 claim." Id. For these reasons, Levine has not stated a claim pursuant to section 349 of the New York General Business Law and this claim will be dismissed.

iv. **Accounting** (Count 21)

Defendants take issue with this claim because it is not a cause of action, but instead a remedy.  Regardless, they contend an accounting is preempted when alleged in connection with copyright infringement claims.  Levine points out the claim is premised on the agency relationship between the parties (terminated in 2008), and not on the alleged infringement.

"To make out a claim for an accounting under New York law, a plaintiff must allege (a) that a fiduciary relationship existed between the parties, and (b) that the defendant breached his or her fiduciary duty."  Soley v. Wasserman, --- F. Supp. 2d ----, No. 08 Civ. 9262, 2011 WL 4526145, at *33 (S.D.N.Y. Sept. 29, 2011).  "[A]ccounting claims based primarily on copyright infringement do not satisfy the 'extra element' test and are preempted."  Gary Friedrich Enters., 713 F. Supp. 2d at 233.

The distinction between Group A and Group B photographs is again important.  Like in Weber v. Geffen Records, Inc., it is only through plaintiff's claim that he did not authorize defendants' distribution, publication, and/or reproduction of the Group A photographs that anyone profiting must account to plaintiff.  See Weber, 63 F. Supp. 2d at 463.  Because the accounting claim with respect to the Group A photographs is "based primarily on copyright infringement," it does not satisfy the extra element test and is preempted.  See Gary Friedrich Enters., 713 F. Supp. 2d at 233.

The accounting claim with respect to the Group B photographs is not "based primarily on copyright infringement."  See id.  The complaint alleges the parties had an agency relationship and Landy was obligated to "report, account, and remit royalty payments" to plaintiff and "[i]n entering into this agreement, Plaintiff trusted Defendant Landy to be fair, honest, and truthful in their business dealings."  Compl., ¶ 12.  Levine also alleges Landy

breached his duties when he failed to report, account, and remit royalty payments to plaintiff. See, e.g., id. ¶¶ 35, 189, 190, 209.  Further, defendants have exclusive possession of the books and records reflecting the "copying, use, publication, distribution, and exploitation" by defendants of Levine's photographs.  Id. ¶¶ 208–209.  Whether styled as a cause of action or a requested remedy, plaintiff's request for an accounting with respect to the Group B photographs is not preempted because it is based on the parties' business relationship.

## IV.  CONCLUSION

The complaint alleges defendants engaged in conduct in the United States relating to the Fetjaine book, which if true, would be in violation of the Copyright Act.  Further, Levine possesses registered copyrights for all of the works identified in the copyright infringement causes of action.  Moreover, based on plaintiff's alleged dates, he is limited to seeking statutory damages and attorneys' fees for only those works registered prior to infringement. Finally, the complaint contains sufficient allegations giving rise to claims of contributory copyright infringement and the claims involving third parties will not be dismissed.

Turning to the remaining non-infringement causes of action, plaintiff's unjust enrichment claim is preempted as to the Group A photographs but not the Group B photographs.  Additionally, defendants' motion to dismiss the conversion and Lanham Act claims will be denied.  However, the common law unfair competition and New York General Business Law section 349 claims are preempted and will be dismissed.  Finally, plaintiff's demand for an accounting will be dismissed as to the Group A photographs but may remain as to the Group B photographs.

Therefore, it is

ORDERED that

1. Defendants Elliot Landy and Landyvision, Inc.'s motion to dismiss is DENIED in part and GRANTED in part;

2. The requests for statutory damages and attorneys' fees as to Counts 2, 7, 9, 11, 12, and 16 are DISMISSED;

3. The unjust enrichment claim (Count 18) as it relates to Group A photographs is DISMISSED;

4. The New York State common law unfair competition claim (Count 20) is DISMISSED;

5. The New York State General Business Law section 349 unfair competition claim (Count 20) is DISMISSED;

6. The request for an accounting (Count 21) as it relates to Group A photographs is DISMISSED; and

7. Defendants shall file an answer to the remaining causes of action on or before January 20, 2012.

IT IS SO ORDERED.

_____

United States District Judge

The following causes of action remain and must be answered:

(a) Counts 1-17, Copyright Infringement;

(b) Count 18, Unjust Enrichment with respect to Group B photographs;

(c) Count 19, Conversion;

(d)  Count 20, Lanham Act; and

(e)  Count 21, Accounting with respect to Group B photographs.

Dated:   December 30, 2011
         Utica, New York.